

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROL M. MURPHY,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of the Social Security Administration,<br><br>Defendant. | No. 07 C 4877 |

## MEMORANDUM OPINION AND ORDER

This case is in federal court for the second time. In 2001, plaintiff Carol Murphy applied for disability insurance benefits with an onset date of April 28, 2001. Her application was denied through all levels of administrative review and she appealed to the United States District Court for the Northern District of Illinois. Magistrate Judge Mason remanded the case to the Commissioner of Social Security for further consideration. While her case was pending before Judge Mason, she reapplied for disability insurance with a November 2001 onset date and applied for supplemental security income with an onset date of February 14, 2005. These applications were consolidated with the remanded case. An Administrative Law Judge ("ALJ") held a hearing and denied the applications. The appeals council denied plaintiff's request for review, and this suit followed. The plaintiff and the Commissioner both move for summary judgment. For the reasons stated below, plaintiff's motion is granted and the Commissioner's motion is denied. We remand the case to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

All medical evidence, vocational expert ("VE") testimony, and plaintiff's testimony prior to her first hearing before the ALJ have been detailed in Magistrate Judge Mason's earlier opinion. We presume familiarity with that opinion and therefore summarize only the background that occurred after the original hearing.

Medical Evidence

After her original hearing before the ALJ, plaintiff was treated by Dr. Kenneth Candido, a physician at Northwestern University Hospital. During his treatment, Dr. Candido reported that Murphy had chronic pain in her right thumb that had worsened through the years, and also had progressed to her neck, chest, right breast, and her lower back (R. 439). On December 2, 2004, Dr. Candido stated that he felt it would be beneficial for Murphy to reduce her workload to 25 hours a week, in order to continue her physical therapy and medical treatment (R. 459).

On January 19, 2005, Dr. David Walega, an anesthesiologist at Northwestern, examined Murphy and indicated that no further therapeutic options were available to deal with the pain that she was experiencing (R. 455). At that time, Dr. Walega found it inappropriate to grant Murphy's request for further work restrictions, given his physical findings (*id.*). He further found that plaintiff had "severe but vague pain throughout the entire Rt. upper extremity, recalcitrant to therapeutic and diagnostics blocks performed by Dr. Candido," and referred her to an interdisciplinary pain management program in order to focus on improving hand function and ability to cope with pain (*id.*). Dr. Walega also pointed out the Dr. Candido's earlier assessment of plaintiff's ability to work was not based on a Functional Capacity Exam (*id.*).

Plaintiff next attended the Rehabilitation Institute of Chicago – a pain management program. She was given neuromuscular electrodiagnostic testing while under examination by Dr. Santiago Toledo (R. 500). The test showed no evidence of right median neuropathy or cervical radioculopathy (*id.*). In July 2005, Dr. Patil examined Murphy and noted that she had a full range of motion in all joints, except for mild limitation of her thumb, making opposition of her right thumb mildly painful (R. 514). He also stated that plaintiff had full motor strength in upper and lower extremities, and that there were no signs of muscle wasting or paralysis (R. 513). In February 2006, Dr. Patil reexamined Murphy and once again noted full strength in extremities and no muscle wasting (R. 526). He noted that Murphy had some difficulty with fine and gross manipulation with her right hand, though she could still perform many functions (*id.*). He further remarked that her right hand grip strength was 4/5, and that she could oppose her right thumb 50-60% (*id.*).

On July 7, 2005, Dr. Francis Vincent reviewed Murphy's records and proffered that she could lift and carry 20 pounds occasionally, and 10 pounds frequently, and stand and/or walk with normal breaks for about six hours during an eight-hour day (R. 517). Dr. Vincent also concluded that Murphy would need to periodically alternate sitting and standing to relieve pain and discomfort (*id.*). Furthermore, Dr. Vincent stated that Murphy had herniated discs, as well as pain in her neck and right hand (R. 523).

Dr. Paul Smalley, a state agency medical consultant, reviewed plaintiff's record and found that she had the ability to lift 20 pounds occasionally, and 10 pounds frequently (R. 529). He also found that she could sit, stand or walk for six hours during an eight hour day (*id.*). Unlike Dr. Vincent, Dr. Smalley did not note that a sit/stand option was needed (*id.*). Dr. Smalley stated that even though Murphy alleged severe ongoing pain, all test results were

negative (R. 535). He remarked that her range of motion was only limited by pain – she was showing no signs of atrophy and her EMG was normal (*id.*). Dr. Smalley considered Murphy's symptoms inconsistent with the objective findings (*id.*).

<u>Plaintiff's Testimony</u>

Plaintiff testified that she was 39 years old at the time of the second hearing (R. 568). She has a high school degree, and has taken some college courses which she was forced to discontinue after her injury (R. 568-569). She was employed from 1988 until 2001. During this time she worked as a salesperson, receptionist, weight control counselor, kitchen supervisor, billing and filing clerk and cashier (R. 228-235).

Ms. Murphy worked a full schedule at her sister's house until December 2004 (R. 576-77). Thereafter, she moved to working a part-time schedule of 25, and later 16, hours a week (R. 580-81). Plaintiff decreased her workload, with Dr. Candido's approval, and did so because she could no longer handle a full-time work schedule (R. 576-77). Moreover, she stated that she gave Dr. Candido's note to her sister's social worker, who dealt with obtaining the approval of the state agency that employed her (R. 578).

Ms. Murphy, her sister and her social worker, all agreed that Ms. Murphy would not be paid for the time she took off from work (R. 578-579). She testified that the state paid her and approved her hours, but that the determination as to her work hours was made after discussions with her sister (*id.*). Murphy initially testified that she could perform a hostess job that did not involve lifting or grasping, but she subsequently testified that her knee problem would prevent this (R. 585-86). Also, she said that she could not perform a hostess position that required her to stand eight hours a day, without sitting, or one that required her to work a regular and continuous full-time schedule, because she needed to take unscheduled days off

due to pain (R. 587-590).

Vocational Expert's Testimony

Michelle Peters was the VE at the hearing (R. 563). The ALJ asked her if a person of plaintiff's age, education and vocational background, with the following conditions, could perform any of plaintiff's past work: the person was right-dominant and limited to less than occasional use of the right hand for gross or fine manipulation; could on occasion lift and carry 20 pounds, and 10 frequently; had an ability to push or pull weight of under 20 pounds; and could stand, walk, or sit for six hours in an eight-hour day (R. 598-99). The VE testified that all of Murphy's past jobs would be eliminated (R. 599). The ALJ then asked whether any jobs would be available for such an individual, to which the VE responded that hosting positions, numbering 800 total positions in the Chicago metropolitan area, would be available (*id.*). The VE further testified that if the individual needed a sit/stand option, the hosting position she had outlined would no longer be an available option (R. 600). Moreover, if that individual needed to take unscheduled days off, or breaks, no host positions would be available (R. 600-601).

Commissioner's Decision

On July 11, 2006, the ALJ issued a new determination, finding that plaintiff was not disabled – he followed the familiar five-part test for disability. *See* 20 C.F.R. §§ 404.1520, 416.920. He determined that plaintiff's work for her sister constituted substantial gainful activity that occurred after the alleged onset date (step 1), but that it was not necessary to end the inquiry at this step because he ultimately determined, for other reasons, that plaintiff was not disabled. He next found that the pain in plaintiff's right hand and the degenerative changes in her spine were severe impairments (step 2), and that she did not have an

impairment or combination of impairments that medically equaled one of the listed impairments (step 3). The ALJ then determined that plaintiff had the residual functional capacity ("RFC") "to lift, carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and perform unlimited pushing and pulling up to 20 pounds. The claimant is further limited in that she can only use her right hand for fine and gross manipulation less than 1/3 of an 8-hour workday." The ALJ, using this RFC, determined that plaintiff could not perform her past relevant work (step 4). Finally, based on the regulations and the testimony of the VE, the ALJ determined that a person of plaintiff's age, education, work experience and RFC was not disabled (step 5).

Thereafter, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981; Herro v. Shalala, 19 F.3d 329, 332 (7th Cir. 1994). Pursuant to plaintiff's rights under the Social Security Act (42 U.S.C. § 405), she filed this action seeking judicial review of the Commissioner's determination.

## LEGAL ANALYSIS

Plaintiff first argues that the ALJ erred when he failed to discuss Dr. Vincent's opinion that a sit/stand option would be necessary in whatever job she would attempt to perform. Instead, she contends that the ALJ gave overriding authority to Dr. Smalley's assessment that she did not require a sit/stand option. The Commissioner argues that it was appropriate for the ALJ to give more weight to Dr. Smalley's opinion because it was more recent than Dr. Vincent's and, in any event, Dr. Smalley's opinion is consistent with the remainder of the record.

This court must affirm the ALJ's decision if it is supported by substantial evidence and

is free from legal error. 42 U.S.C. § 405(g); Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). The court may not decide the facts anew, re-weigh the evidence or substitute its judgment for that of the Commissioner. Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). Although this standard is generous, it is, however, not entirely uncritical. The SSA must consider the entire record, including all relevant medical and non-medical evidence, such as a plaintiff's own statement of what he or she is able or unable to do. Hickman v. Apfel, 187 F.3d 683, 689 (7th Cir. 1999). We recognize that the ALJ is not required to address every piece of testimony and evidence. However, an ALJ may not select and discuss only that evidence that favors his ultimate conclusion. *See* Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783, 786 (7th Cir. 2003). At some minimum level the ALJ must articulate his analysis of the evidence to allow a reviewing court to trace the path of his reasoning. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

Here, the determination of whether plaintiff required a sit/stand option is of paramount importance. According to the VE, if plaintiff is subject to the RFC, as articulated by the ALJ, then there were jobs available to her in the local economy and she would not be considered disabled under the regulations. With the added requirement of a sit/stand option, however, there were no jobs available to plaintiff. The bulk of the ALJ's RFC analysis focuses on whether pain limits plaintiff's abilities, but the sit/stand option is never specifically discussed. The ALJ simply stated that he would "afford Dr. Smalley's medical opinion significant weight in that it is consistent with and supported by the longitudinal record" (R. 283). He did not discuss why he chose to discount Dr. Vincent's assessment. To the extent that the Commissioner now attempts to explain the ALJ's decision in more detail, we note that our decision must be confined to reviewing the ALJ's reasoning, not the reasoning put forth by the

Commissioner on a motion for summary judgment. Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). Because the ALJ has not articulated his reason for discounting Dr. Vincent's opinion, his RFC determination cannot be upheld.

Although the error outlined above, by itself is enough to require a remand, to further aid the Commissioner we discuss two other errors in the ALJ's opinion. First, the ALJ discounted the opinion of one of plaintiff's treating physicians, Dr. Candido. Dr. Candido saw the plaintiff on four occasions in the fall of 2006. At her fourth appointment, Dr. Candido supported plaintiff's request to reduce her work schedule from full-time to part-time, and wrote her a note to that effect (R. 459). Several months later plaintiff saw Dr. Walega, instead of Dr. Candido. At this meeting, plaintiff requested a full work release, but Dr. Walega refused to grant further work restrictions. He noted that her request was inconsistent with his physical findings and that Dr. Candido's opinion was not based on a functional capacity examination (R. 455). The ALJ, citing the same two reasons, gave Dr. Walega's opinion controlling weight over Dr. Candido's.

We review the ALJ's legal conclusions *de novo*. Schmidt v. Astrue, 496 F.3d 833, 841 (7th Cir. 2007). An ALJ must give controlling weight to the opinion of a treating physician if (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) the opinion is "not inconsistent with the other substantial evidence in the case record." *See* 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p; *see also* Schmidt, 496 F.3d at 842. The treating physician's opinion is not the final word on the claimant's disability, but the ALJ must minimally articulate his reasons for discrediting the evidence. *Id.*

The ALJ makes an incorrect assumption that Dr. Walega's refusal to grant plaintiff a full work release implies that he disagreed with Dr. Candido's assessment. Dr. Walega never

stated that Dr. Candido's decision to have plaintiff work part-time was incorrect – he simply decided that expanding upon Dr. Candido's recommendation would not be the correct approach. As such, it is possible to give controlling weight to both opinions simultaneously. Because this was the only reason provided by the ALJ for discounting Dr. Candido's opinion, it was error. We do not hold today that the ALJ must credit Dr. Candido's opinion, but to discount it he needs to provide a valid reason, as required under the regulations and SSR 96-2p.

Next, the ALJ erred by failing to ask the VE about potential inconsistencies between the requirements of a hosting job and plaintiff's RFC. Hosting, as defined by the Dictionary of Occupational Titles, requires handling from one-third of the time to two-thirds of the time. The ALJ determined that plaintiff could only use her right hand for fine/gross manipulation for up to one-third of the work day.

Social Security Ruling 00-4p requires an ALJ to ask a vocational expert about any possible conflicts between his testimony and the DOT, and to elicit reasonable responses for any discrepancy. Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006). The Commissioner argues that no discrepancy existed in this case because the DOT anticipates some hosting jobs that require handling no more than one-third of the day. But the DOT entry could just as easily be read as indicating that all hosting jobs require handling at varying lengths between one-third and two-thirds of the workday. Under such an interpretation, plaintiff would be unable to preform the job. This potential discrepancy is enough to trigger the ALJ's affirmative duty, under SSR 00-4p, to investigate possible conflicts with the VE.

Plaintiff raises several additional arguments, but none rises to the level of error requiring remand. We discuss each argument briefly.

First, plaintiff argues that the ALJ did not properly credit the severity of her herniated disc condition when he determined her RFC – she concedes that he accepted her spinal condition as a severe impairment. Her current argument is with the weight the ALJ gave to the pain caused by the condition.

As we have already stated, in our review we may not re-weigh the evidence. Powers, 207 F.3d at 434. In any event, we have already determined that for other reasons the RFC determination cannot stand.

Next, plaintiff argues that when the ALJ determined whether any work was available for her in the local economy, he did not account for her testimony that she would have to take unscheduled days off due to pain, and that he failed to offer any explanation as to why he did not consider this testimony. Plaintiff argues that this same error was one of the bases for Judge Mason's earlier remand, and as such should have been specifically addressed by the ALJ in his new opinion. We cannot agree with plaintiff's characterization of Judge Mason's opinion. While it is true that Judge Mason notes that the ALJ failed to consider plaintiff's testimony that she missed work two days per week, Murphy, 417 F. Supp. 2d at 973, it was in the context of determining that the ALJ's credibility determination could not stand. Judge Mason concluded that the ALJ failed to consider the entire record and provided a list of examples of information that should be considered on remand. One such item was "any other factors concerning her functional limitations and restrictions due to her pain or other symptoms." Id. The ALJ complied with this requirement when he determined that plaintiff was indeed in pain, but that her testimony as to the severity of that pain was not credible.

In his most recent opinion, the ALJ again found that plaintiff's testimony was not credible. However, this time the ALJ provided extensive reasons for his determination.

Plaintiff makes no attempt to argue that the adverse credibility determination as a whole is not supported by specific reasoning. Indeed, we fail to see how such an argument could be successful based on the ALJ's opinion. Instead, plaintiff contends that the ALJ should have provided specific reasoning why he was discrediting this specific piece of her testimony. She provides us no authority that places that burden on the Commissioner after he has made a valid adverse credibility determination, and we are aware of none.[1] Because she does not attack the ALJ's credibility determination as a whole, her argument fails.

Finally, plaintiff argues that the ALJ erroneously concluded that the work she preformed for her disabled sister was substantial gainful activity. Although the ALJ did not use this determination to find that plaintiff was ineligible for benefits at Step 1, plaintiff contends that the ALJ later used this conclusion to determine, as further evidence, that she was not disabled. We agree with the Commissioner that because the ALJ did not end the disability analysis at Step 1, any error is harmless. Because evidence of plaintiff's work for her sister was in the record, the ALJ was entitled to consider it when making his disability determination, regardless of what title it was given.

We acknowledge that in the ALJ's first opinion he determined that plaintiff's work for her sister was not substantial gainful employment. We are also surprised that the ALJ did not discuss the factors for sympathetic employment in the second opinion, when he changed his mind and determined that this employment was a "full time job which had some flexibility built into it." But, because he chose not to treat the issue as a dispositive one, it is of no import. On remand, should he rely on this determination to end the disability analysis at step one, we

---

[1] Plaintiff does cite to two district court cases, but these cases discuss the ALJ's duty in evaluating the claimant's credibility as a whole. They do not place a duty on the ALJ to provide specific reasoning as to why he is discrediting certain testimony after an adverse credibility finding. *See* Frobes v. Barnhart, 467 F. Supp. 2d 808, 821-22 (N.D. Ill. 2006), Lawson v. Barnhart, 455 F. Supp. 2d 747, 770-71 (N.D. Ill. 2006).

would expect him to provide a more thorough discussion of whether plaintiff's employment with her sister was sympathetic employment.

## CONCLUSION

The ALJ's most recent thorough opinion sought – and largely succeeded – to address Judge Mason's concerns. However, for the reasons stated above, we deny the Commissioner's motion for summary judgment. We grant plaintiff's motion for summary judgment and remand the case to the Commissioner for proceedings consistent with this opinion.

JAMES B. MORAN
Senior Judge, U. S. District Court

_Oct. 2_, 2008.